*E-FILED 8/27/2009*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAILA BATTS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CLARA, PETER CRANDALL, CHRISTINA ARQUERO, and DOES 3-20,<br><br>    Defendants. | No. C08-00286 JW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS RE SUBPOENAED RECORDS**<br><br>[Re: Docket Nos. 44, 53] |

Plaintiff Laila Batts claims that during her 10-day incarceration at the Elmwood Women's Facility ("Elmwood") from January 5-14, 2007, defendants failed to diagnose and provide appropriate medical care for her ectopic pregnancy. She seeks damages for alleged violation of her civil rights (42 U.S.C. § 1983), failure to summon medical care (Cal. Gov. Code § 845.6), and professional negligence. (Amended Complaint, Docket No. 63).

Batts indisputably has put her mental condition at issue. She claims severe emotional distress and psychological injury as a result of defendants' alleged conduct. She disclosed clinical psychologist, Gordon Ulrey, Ph.D. as an expert. In Dr. Ulrey's opinion, plaintiff suffers from post traumatic stress and that defendants' alleged conduct contributed to her mental state.

The County has served non-party subpoenas for plaintiff's medical, employment, and family planning records, as well as Oakland police records pertaining to plaintiff. It contends

that the subpoenaed records are relevant because (a) plaintiff has put her mental health and claimed lost wages at issue; (b) plaintiff has testified about these records in her deposition; and (c) plaintiff's experts rely on some of these records in rendering their opinions. Several of the subpoenaed individuals and entities have refused to produce the documents without plaintiff's written authorization for the release of the requested records. Plaintiff objects to the production of many of these documents and refuses to sign any release forms. Accordingly, the County now moves for an order compelling the production of the subpoenaed records. Alternatively, the County seeks an order precluding plaintiff from introducing any testimony or documents on matters contained in those records. For her part, plaintiff moves for an order (a) limiting this non-party discovery (she claims that much of it is irrelevant and violates her privacy) and (b) compelling the County to give her, at the County's expense, a copy of all subpoenaed records it obtains or has already obtained.[1]

Upon consideration of the moving and responding papers, as well as the arguments of counsel, the parties' respective motions are each granted in part and denied in part.

**A.   County's Motion to Compel Release of Certain Records and Plaintiff's Motion to Limit Third Party Discovery**

   **1.   Medical/Family Planning Records**

The County has not managed to persuade that records sought from the Webster Street Family Planning and Specialist Group are relevant or reasonably calculated to lead to the discovery of admissible evidence. This court is unconvinced that the records are necessary to cross-check the validity or completeness of plaintiff's report to Dr. Crandall when he took her history at Elmwood. Additionally, the report of Nurse Lal, plaintiff's designated expert, indicates that Lal did not need or review these records in rendering his opinion. (Harris Decl., Ex O). In any event, this court does not find that the County's stated need for these records

---

[1] These issues are only some of the matters raised in plaintiff's motion. Because they are intertwined with the issues raised by the County's instant motion to compel, this court addresses both motions concerning this non-party discovery together in this order. The other issues raised in plaintiff's motion will be addressed in a separate order.

2

1  outweighs plaintiff's privacy interests in those matters. As to these documents, the County's
2  motion is denied and plaintiff's motion is granted.

3  As for the records subpoenaed from the Employment Development Department
4  ("EDD"), the County seeks all records pertaining to all disability claims made by plaintiff.
5  Defendants are particularly interested in two disability claims that plaintiff reportedly filed in
6  2007. (See Harris Decl., Ex. J). Plaintiff submitted one of those claims in June 2007 (i.e.,
7  several months after the events forming the basis for the instant lawsuit), claiming to be
8  depressed because of an alleged sexual harassment incident that occurred at her former
9  workplace in 2004 (i.e., several years before her incarceration at Elmwood). The County has
10 obtained a copy of plaintiff's claim statement, but wishes to obtain copies of all EDD records
11 pertaining to plaintiff's disability claims because they may contain information that undermines
12 the claimed mental injuries she attributes to defendants. Plaintiff says that all of her post-
13 incarceration medical records have been produced and that the County can (and has) deposed
14 plaintiff and others about the prior alleged harassment incident. She contends that defendants
15 need nothing more.

16 Inasmuch as the requested EDD records appear to relate or pertain to plaintiff's post-
17 incarceration mental condition, this court finds that the documents are relevant or reasonably
18 calculated to lead to the discovery of admissible evidence. Accordingly, the County will be
19 permitted discovery of these records. The EDD subpoena, however, will be limited to the
20 disability claims that plaintiff submitted in 2007 and after. As to these records, the County's
21 motion is granted (as limited by this court) and plaintiff's motion is denied.

22 **2.     Plaintiff's Psychiatric Records**

23 Although it is far from clear, the only documents in dispute appear to be those pre-
24 dating plaintiff's incarceration at Elmwood (or, at least, those are the only documents as to
25 which she opposes disclosure).[2]

---

27 [2]    It is not entirely clear when each of the identified treatment provider(s) saw
28 plaintiff. Further muddying these waters – at the motion hearing, defense counsel stated that
   she has now learned about the existence of seven other treatment providers that plaintiff did
   not identify in response to the County's interrogatories. Plaintiff's counsel claims that those

3

With respect to plaintiff's psychiatric records pre-dating her incarceration at Elmwood, this court finds that while those records might have some relevance to the issues in this litigation, plaintiff has not waived the psychotherapist-patient privilege as to those communications. There is no dispute that federal privilege law applies, see Fitzgerald v. Cassil, 216 F.R.D. 632, 635 (N.D. Cal. 2003), and that a therapist-patient privilege exists under federal law, see Jaffee v. Redmond, 518 U.S. 1, 15 (1996). Additionally, the County says that it is willing to accept that the so-called "narrow" approach[3] to waiver applies. (See Reply at 2). Although the parties focus all of their arguments as to *whether* there has been a waiver, what they actually dispute is the *scope* of any waiver. Plaintiff seems to agree that her post-incarceration records are fair game for discovery. The County argues that, in fairness, the waiver necessarily extends to all psychiatric records pre-dating the events at issue in this lawsuit so that defendants can fully explore plaintiff's mental state. However, this seems to be the kind of balancing analysis that the Supreme Court expressly rejected in Jaffee. 518 U.S. at 17. Moreover, "[u]nder the narrow approach . . . courts have held that there must be affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived." Fitzgerald, 216 F.R.D. at 636.

---

providers are not from the post-incarceration period. Defense counsel insists that they are. Inasmuch as these additional providers have not been identified for the court, this court is not prepared, on the record presented, to say one way or the other. Nevertheless, as discussed more fully above, this court concludes that plaintiff has not waived the therapist-patient privilege as to her pre-incarceration psychiatric records.

[3] In the wake of the Supreme Court's decision in Jaffee, there emerged three different approaches to determine when a waiver occurs. Courts espousing the so-called "broad" approach hold that a simple allegation of emotional distress in a complaint constitutes a waiver. The underlying rationale is based on fairness considerations. See Fitzgerald, 216 F.R.D. at 636. "That is, if a plaintiff claims emotional distress, then a defendant needs to be able to challenge that claim thoroughly; psychological records can illuminate, for instance, whether there are sources of emotional distress other than the defendant's conduct." Id. Courts following the middle or "limited broad" approach find waiver where a plaintiff alleges more than "garden variety" emotional distress – for example, where a plaintiff alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress. Id. at 637. Finally, courts adopting the "narrow" approach hold that there must be an affirmative reliance on the psychotherapist-patient communication before the privilege is waived. Id. at 636. These courts focus on the "primacy of the privacy interests inherent in the privilege and Jaffee's rejection of the balancing approach." Id.

4

Batts represents to the court that all post-incarceration psychiatric records pertaining to her mental state have been produced or made available and that she has no intention of relying on any pre-incarceration records or treatment provider testimony. Accordingly, this court finds that the waiver does not extend to her pre-incarceration records. On this issue the County's motion is denied and plaintiff's motion is granted. However, this court notes that the privilege does not preclude defendants from examining plaintiff, her experts or defense experts about other stressors or contributing factors that may explain or have contributed to her claimed current emotional distress. Id. at 638.

As for documents sought from the Sacramento County Adult Mental Health Services (SCAMHS) and Dr. Dickerson, these records presumably comprise plaintiff's post-incarceration treatment records because plaintiff does not seem to dispute that defendants should have access to these documents. She says only that these records have already been produced or made available to defendants. At oral argument, defense counsel said that, on the eve of the motion hearing, plaintiff's counsel simply emailed her a copy of records (comprising four pages) that plaintiff received from Dr. Dickerson. Defendants say that they otherwise have not had access to the records sought, and the County wishes to subpoena these records for itself. Because there appears to be no dispute that defendants should have access to those records, and on the assumption that these are records of plaintiff's post-incarceration treatment, the County's motion as to SCAMHS and Dr. Dickerson is granted.

**3.   Employment Records**

Plaintiff's motion to limit the County's subpoenas for her past employment records is denied as moot. The County reports that it already obtained her records by the time plaintiff's motion was filed.

**4.   Oakland Police Records**

Plaintiff's motion to quash the County's subpoena for a report she filed with the Oakland Police Department is denied as moot. The County reports that it already obtained these records by the time plaintiff's motion was filed.

### B.   Plaintiff's Request for Copies of Subpoenaed Records

As noted above, plaintiff seeks an order requiring the County to give her, at the County's expense, a copy of all subpoenaed records it obtains or has already obtained. Plaintiff brought the matter before this court on the ground that she is impecunious. However, based on the discussion held at the motion hearing, it is now apparent that this squabble, boiled to its essence, actually stems from plaintiff's desire to "piggyback" on the County's subpoena work and the County's annoyance at her attempt to do so. Indeed, at oral argument, plaintiff said that she originally offered to pay for the production of these records, but when the County refused to produce them, she decided to seek a court order forcing the County to not only give her a copy of the records, but to give them to her for free. The County argues that it is not obliged to give plaintiff a copy (free or otherwise) of the subpoenaed documents it has obtained because (a) she can, but has not subpoenaed the records for herself; and (b) the third-party records are not in the County's "control" in any event. At the motion hearing, plaintiff acknowledged that she could have essentially joined in the County's subpoena process and requested copies directly from the non-parties, but did not do so.

Reasonable counsel should have been able to resolve this particular dispute between themselves. Nevertheless, since the parties have been unable to reach any agreement: The County shall produce to plaintiff a copy of all of the subpoenaed records it has obtained thus far. Although the County contends that non-party records are not in its legal "control," copies of these documents that it has obtained indisputably are now within its legal "custody" or "possession." FED.R.CIV.P. 34(a). The costs of production, however, shall be borne entirely by plaintiff. As to subpoenaed documents that the County will, but has not yet obtained, plaintiff shall either request copies of the same (at her expense) from the non-parties or subpoena the records herself.

SO ORDERED.

Dated:   August 27, 2009

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  5:08-cv-00286-JW Notice has been electronically mailed to:

2  Aryn Paige Harris aryn.harris@cco.sccgov.org, anna.espiritu@cco.sccgov.org

3  Gregory Joseph Sebastinelli gregory.sebastinelli@cco.co.scl.ca.us, marylou.gonzales@cco.sccgov.org

4

5  Jeremy L. Friedman jlfried@comcast.net

6  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.